1

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11   MONROE JONES,                        Case No. 22-cv-07365-WHO (PR)

                    Plaintiff,
12                                         **ORDER GRANTING**
13          v.                             **DEFENDANT'S MOTION FOR**
                                           **SUMMARY JUDGMENT**
14   RAHIMI,
                                           Dkt. No. 17
15                  Defendant.

16

17                        **INTRODUCTION**

18          Plaintiff Monroe Jones alleges in this 42 U.S.C. § 1983 action that Deputy Rahimi,

19   a correctional deputy with the San Mateo Sheriff's Department, used excessive force on

20   him and retaliated against him by having him transferred to another facility within the

21   department.  Rahimi moves for summary judgment on grounds that Jones did not exhaust

22   his administrative remedies for any claims.  The motion is unopposed.[1]  I will grant

23   summary judgment in Rahimi's favor because Jones's allegations are that Rahimi used

24   excessive force and retaliated against him **after** Rahimi tore up the grievance, and there is

25   _____

26   [1] Jones has not filed an opposition to the motion for summary judgment.  He did attempt to
     file an opposition to another filing.  He filed a motion for access to the court, which
27   defendant opposed because he actually had access.  (Dkt. Nos. 19 and 22.)  Jones later
     filed a notice two months ago in which he declared that he tried to file an opposition to
28   defendant's opposition to the motion for court access, but that that opposition was lost.
     (Dkt. No. 23.)

United States District Court
Northern District of California

1    no record of a subsequent grievance.  Accordingly, Jones did not exhaust his

2    administrative remedies and this case must be dismissed.

3                                      **BACKGROUND**

4            The following factual allegations are undisputed unless specifically noted

5    otherwise.  Jones was a pretrial detainee in the custody of the San Mateo County Sheriff's

6    Office from roughly May 2022 to April 2023.  (Mot. for Summ. J. (MSJ), Dkt. No 17 at 7.)

7    He was classified as requiring protective custody.  (*Id.*)  His trial started and concluded in

8    February 2023, and resulted in his conviction on two felony charges.  (*Id.*)  He was

9    sentenced in April 2023.  (*Id.*)

10           Jones alleges that on October 26, 2022 at the San Mateo County Sheriff's Office he

11   presented a complaint against Deputy Rahimi to Deputy Rahimi.  (Compl., Dkt. No. 1 at

12   3.)  Rahimi, after reading the complaint, told Jones to turn around and put his arms behind

13   his back, which he did.  (*Id.*)  Rahimi then said, "I should have done as my sergeant told

14   me to do.  Lock you up in ad seg, when you filed that first complaint on me."  (*Id.* at 4.)

15   He then twisted Jones's arm until "something broke or smashed," cuffed him while

16   pushing upwards, which caused further injury to his shoulder, and pushed him out of the

17   unit while applying "extreme pressure" to the shoulder, causing further injury.  (*Id.*)  He

18   was first placed in an isolated cell, then moved to "Bay One," a restricted housing unit, and

19   was there for several days before being sent to court.  (*Id.*)

20           Some days later, when Jones returned to the unit after his court date, he was

21   informed by an unnamed deputy that he was being sent to administrative segregation in the

22   Maguire Correctional Facility (MCF).  (*Id.* at 5.)  He alleges that even though no reason

23   was given, he believed that the transfer was an act of retaliation for filing a complaint

24   against Rahimi.  (*Id.*)  He had had no disciplinary infractions and the other deputies at

25   MCF said they do not know why he was sent there.  (*Id.*)

26           Defendant offers a different version of events.  On October 27, 2022 at about 4pm

27   at the Maple Street Correctional Center (MSCC), Jones accused a pod worker who had

28   been distributing mail of opening his legal mail.  (MSJ, Dkt. No. 17 at 8.)  An investigation

United States District Court
Northern District of California

2

1   revealed that the pod worker had not opened his mail, and that it was not legal mail after

2   all, but rather a "standard piece of mail from the Sheriff's Office's Program Services."

3   (*Id.*)

4       At around 4:10 p.m., Jones approached Rahimi, who was sitting at the desk podium

5   assisting the nurses who were there to distribute medications to prisoners, placed a stack of

6   papers on the podium, and demanded that Rahimi read them.  (*Id.*)  He also received his

7   medications and went back to his housing unit.  (*Id.*)  Rahimi read Jones's papers and

8   determined that he was trying to file a complaint with the district attorney regarding that

9   day's mail incident.  (*Id.*)  He saw no formal sheriff's department grievance among the

10  documents.  (*Id.*)  Rahimi told Jones to return to the deputy station, which he did.  (*Id.*)

11  When Jones approached the station, he was "visibly agitated" and complained about how

12  Rahimi had handled his mail that day.  (*Id.*)  He was "disrespectful in his tone and

13  language, aggressively gesturing towards Officer Rahimi, and disturbing the housing unit."

14  (*Id.*)

15      Because of this disturbance, Rahimi thought that Jones should be transferred to a

16  holding cell.  (*Id.*)  He ordered Jones to turn around, which he did.  (*Id.*)  Rahimi "gently

17  placed handcuffs" on Jones, who was "so compliant with Officer Rahimi's orders that

18  Officer Rahimi did have to use any force on Plaintiff while handcuffing him."  (*Id.*)

19  Rahimi summoned another officer to escort Jones out of the housing unit.  (*Id.*)  He then

20  let Jones lead the way to the Unit 1 sallyport, whereupon another officer took over.  (*Id.*)

21  Jones was compliant with Rahimi's orders, Rahimi did not have to use any force on him,

22  and at no point did Rahimi twist or push Jones's arms or push him.  (*Id.* at 8-9.)

23      Rahimi states (and Jones has not disputed) that after the October 27th incident,

24  Rahimi discussed Jones's housing assignment with his supervisor, Sergeant Dennis

25  Loubal.  (*Id.* at 9.)  The two noted that Jones had had "issues" while in his current housing

26  unit:  on October 5, 2022 he had refused to accept a new cellmate; on September 6, 2022,

27  he was written-up for removing his shirt and allowing another inmate to massage his

28  shoulders; and on September 22, 2022 another inmate asked Rahimi to rehouse Jones

United States District Court
Northern District of California

3

1   owing to his disruptive "temper tantrums."  (*Id.*)  Rahimi and Loubal decided that in light

2   of this, they would recommend to the Sheriff's Office Administrative Classification Unit

3   that Jones be transferred to MCF.  (*Id.*)  There he would be housed with only one

4   additional inmate and be observed by two correctional officers rather than by one at

5   MSCC.  (*Id.*)

6       Loubal could make only a recommendation "because correctional officers working

7   on a housing unit do not have the authority to reassign housing of any inmate."  (*Id.* at 10.)

8   Actual authority lies with the Administrative Classification Unit, which approved Loubal's

9   recommendation on or about October 31, 2022.  (*Id.*)  Jones was never housed as an

10  "Administratively Housed" person, which was once known as being in administrative

11  segregation.  (*Id.*)  "The entire time Plaintiff was in Sheriff's Office's custody, he was

12  always classified as a 'protective custody' inmate and never placed in administrative

13  housing."  (*Id.*)

14      It is undisputed that Jones filed administrative grievances using the sheriff's office

15  administrative process on May 17, 2022; May 18; July 9; September 13; September 22;

16  October 5; and October 6.  (MSJ, Dkt. No. 17 at 10.)  It is also undisputed that all these

17  grievances received responses from the sheriff's office.  (*Id.*)

18      The excessive force incident and retaliation about which Jones complains occurred

19  on October 27, 2022.  Rahimi states that Jones never filed a grievance regarding the

20  handcuffing and transfer claims.  (*Id.*)  Jones asserts that he was prevented from

21  administratively exhausting his grievances because Rahimi tore up his appeal **before**

22  handcuffing him and having him transferred to MCF.  (Compl., Dkt. No. 1 at 1.)  There is

23  no evidence of a grievance filed after the incident.

24                          **STANDARD OF REVIEW**

25      Summary judgment is proper where the pleadings, discovery and affidavits

26  demonstrate that there is "no genuine dispute as to any material fact and [that] the movant

27  is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those

28  which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

United States District Court
Northern District of California

248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

### DISCUSSION

Prisoners must exhaust their administrative remedies properly before filing suit in federal court, as mandated by the Prison Litigation Reform Act.  *Ross v. Blake*, 578 U.S. 632, 638-641 (2016); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A prisoner is required to exhaust the grievance procedures that are "capable of use" to obtain "some

United States District Court
Northern District of California

5

United States District Court
Northern District of California

relief for the action complained of." *Blake*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2006)).  Unless the administrative process is not available, "the PLRA's text suggests no limits on an inmate's obligation to exhaust —irrespective of any 'special circumstances.'" *Id.* at 639.  "[T]hat mandatory language means a court may not excuse a failure to exhaust." *Id.*

The prison's requirements define the boundaries of proper exhaustion.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Ngo*, 548 U.S. at 90.  The exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

The defendant bears the burden of proving that an administrative remedy was available to the prisoner and that he failed to exhaust such remedy.  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  "Once the defendant has carried that burden, the prisoner has the burden of production.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

The motion for summary judgment is unopposed.  A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition.  *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact).  The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact.  *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. *Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

1      Rahimi has presented evidence that an administrative remedy was available to Jones

2   — he filed several grievances during his custody — but that Jones did not exhaust any

3   claim regarding this incident.  And Jones has not shown a genuine dispute of material fact

4   that he exhausted his remedies.  He asserts that he was prevented from administratively

5   exhausting his grievances because Rahimi tore up his appeal **before** handcuffing him and

6   having him transferred to MCF.  Taking this as true, this means that Jones could not have

7   attempted to administratively exhaust his claims before filing this § 1983 action.  Jones

8   allegedly handed a complaint to Rahimi, who <u>then</u> handcuffed him and allegedly arranged

9   a retaliatory transfer to MCF.  Because this grievance was written <u>before</u> the incidents

10  giving rise to Jones's claims in this § 1983 action, it could not have contained any mention

11  of the excessive force or retaliatory transfer allegations.

12      Where, as here, a defendant has "provided documentation of non-exhaustion," a

13  plaintiff's conclusory explanation that he exhausted his claims is insufficient to create a

14  triable issue of fact.  *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016) (plaintiff's

15  conclusory allegation that prison administrators obstructed his attempts to exhaust deemed

16  insufficient to rebut defendants' detailed record of plaintiff's repeated failure to use the

17  exhaustion process properly).  The papers in support of the motion for summary judgment

18  are evidence that Jones did not exhaust his claims.  Rahimi's papers are sufficient to

19  support the motion and do not on their face reveal a genuine issue of material fact.

20  Accordingly, Rahimi's motion for summary judgment is GRANTED.

21                                          **CONCLUSION**

22      Rahimi's motion for summary judgment is GRANTED.  The Clerk shall terminate

23  all pending motions, enter judgment in favor of defendant, and close the file.

24      **IT IS SO ORDERED.**

25  **Dated:**  January 31, 2024

26

27  WILLIAM H. ORRICK
    United States District Judge

28

United States District Court
Northern District of California